IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON WEST VIRGINIA

Benjamin H., by his next friend, Georgann H.
David F. by his guardian, Carolyn B.
Lori Beth S. by her next friend, Patrician V. and
Thomas V. by his next friend, Patricia V., and
Justin E. by his next friend, Sherry E.,
Individually and on behalf of all others
Similarly situated,

    Plaintiffs,

v.                                                        Civ. Action No. 3:99-0338

Joan Ohl, Secretary of the Department
of Health and Human Resources,

    Department.

## AGREED ORDER

    This day come the plaintiffs by counsel and the defendant by counsel and agreed on the terms set forth herein.

1. By Order dated April 8, 2009, the consent decree of March 15, 2000, and the Order of April 8, 2009, were dissolved on December 31, 2014 and the action was stricken from the Court's active docket.

2. However, Plaintiffs' counsel has raised a new issue which relates to the subject matter of this case, and the parties are seeking the approval of the Court to ensure that no action is taken which would violate the terms of the consent decree.

3. The consent decree of March 15, 2000, recognized the Department of Health and Human Resources (DHHR) would maintain a wait list for the I/DD Waiver program.

4. Since then, the wait list has been maintained based on the date the individual was found eligible for services. As slots become available, the individuals who have been on the wait list the longest are provided services first, based upon the number of slots available. In other words, the wait list is maintained on a first come, first served basis and no one is moved ahead in line, as this was an allegation in the underlying complaint.

5. The Plaintiffs' counsel has raised an issue regarding individuals who are eligible for the I/DD Waiver program, but are in a state-owned mental institution while waiting for a slot to become available.

6. The parties have agreed DHHR will request approval from the Centers for Medicare and Medicaid Services (CMS) to reserve 6 slots of the total available slots each year of the last two years of the current waiver application to allow certain individuals to be taken off the wait list and provided services ahead of others on the wait list. Specifically, this would apply only to individuals who have been found eligible for I/DD Waiver services, but are on the wait list and have been institutionalized for one year or more at a state-owned mental institution.

7. The amount of reserved capacity is based upon the number of individuals currently on the wait list who have been committed to one of the two state-owned mental institutions for a year or more.

8. The parties also agree to reserve an additional 6 slots for children who are on the waitlist and have been institutionalized in out-of-state facilities for over a year.

9. The capacity that the state proposes to reserve in each year of the current waiver application is specified in the following table:

| Waiver Year | Capacity Reserved |
|---|---|
| Year 1 | 0 |
| Year 2 | 0 |
| Year 3 | 0 |
| Year 4 | 12 |
| Year 5 | 12 |

10. Procedure for operation of Reserved Slots: Individuals who have been at a state-owned mental institution for a year or more and who are on the wait list as of the end of March preceding the next fiscal year will receive a letter awarding them a slot as of the beginning of the fiscal year. Individuals have 180 days from the start of the fiscal year to access an I/DD Waiver direct care service. Individuals who do not access I/DD Waiver direct care by the end of December will be removed from the enrollment list and their slot will be given to the next person on the wait list. If there are any individuals who meet the one year deadline after the end of March and before the end of the succeeding fiscal year, then these individuals will be awarded a slot when they meet the deadline, if there are still slots available from the 6 reserved for that fiscal year. The 6 reserved slots will be pulled from the roll over slots from the I/DD Waiver. Similarly, 6 slots will be reserved for children institutionalized out of state for over a year, with the same procedure applying to the application of those slots. When the roll over slots are assigned in Year 4 and Year 5, the highest person on the wait list will be assigned slot number 13, with slots 1-12 initially reserved. This will ensure that 12 slots are reserved, but also that the next person on the wait list will receive the next roll over slot available. In the event that no individuals qualify for one of these reserved slots, those slots will then be released to the next person on the wait list.

11. Based on the foregoing, the Court FINDS that the DHHR has acted reasonably in reserving slots and has not discriminated against existing class members.

12. The Court does HEREBY ORDER that, in requesting approval from CMS to reserve these slots, DHHR will not violate the consent decree entered in this case.

13. The Court further ORDERS that the file shall be re-opened to permit the admission of this Agreed Order and the file shall close immediately thereafter. The Court further ORDERS that a certified copy this order shall be circulated to all parties of record.

Entered this 25 day of July, 2018.

_____
Robert C. Chambers, Judge

Prepared By:


/s/ Steven R. Compton
Steven R. Compton, Esq. (WV State Bar ID No. 6562)
Deputy Attorney General
Office of the Attorney General
DHHR Division
812 Quarrier Street, 2nd Floor
Charleston, WV 25301
(304) 558-2131
(304) 558-0430 (fax)

Vaughn T. Sizemore, Esq. (WV State Bar ID No. 8231)
Deputy Attorney General
Office of the Attorney General
State Capitol Building 1, Room E-26
Charleston, WV 25305
(304) 558-2021
**Counsel for Department**

/s/ Bren J. Pomponio
Bren J. Pomponio (WV State Bar ID No. 7774)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
(304) 344-3144
(304) 344-3145 (fax)
**Counsel for Plaintiffs**